```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| KEVIN WALLACE,<br><br>                    Plaintiff,<br><br>     v.<br><br>BANK OF AMERICA, et al.,<br><br>                    Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 11-0038 (JBS/KMW)<br><br>**OPINION** |

APPEARANCES:

Kevin Wallace
1301 N Kings Hwy.
Cherry Hill, NJ 08034
     Pro Se

Christopher Neal Tomlin, Esq.
Martin C. Bryce, Esq.
BALLARD SPAHR LLP
210 Lake Drive East
Suite 200
Cherry Hill, NJ 08002-1163
     Counsel for Defendants

**SIMANDLE**, District Judge:

I.   **INTRODUCTION**

     Plaintiff, Kevin Wallace, brought this suit against Bank of America Corporation, Bank of America, N.A., BAC Home Loan Servicing (BAC), Bank of America Loans Servicing, and Bank of America Home Loans for alleged violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605, breach of contract, promissory estoppel, unreasonable debt collection efforts, misrepresentation, and a violation of the New Jersey

Debt Collection Act. This matter comes before the court on Defendants' unopposed motion to dismiss. [Docket Item 4.] Because, as explained in today's Opinion, Plaintiff's allegations are too ambiguous or conclusory in critical parts, the Court will dismiss these claims without prejudice (with the exception of the New Jersey Debt Collection Act, which will be dismissed with prejudice as that proposed legislation has not been passed into law).

## II. BACKGROUND

On November 15, 2000, Plaintiff, Kevin Wallace, borrowed $286,400.00 from Commerce Bank to purchase a home in Cherry Hill, New Jersey. Compl. ¶ 14. At some point, the servicing of Plaintiff's loan was transferred to BAC, which is a wholly-owned subsidiary of Bank of America. Compl. ¶¶ 1, 14.

According to the Complaint, Plaintiff, who works as a real estate agent, experienced a period of reduced income as a result of this country's housing crisis. Compl. ¶ 15. During this period, Plaintiff's wife suffered a heart attack, which led to increased medical costs and further loss of income. Id. Consequently, Plaintiff contacted BAC in August 2009 to try to find a way to prevent a possible default and foreclosure on his home. Id. BAC informed Plaintiff that two programs existed, which, based on the information Plaintiff had given BAC over the

phone, BAC believed could cut his payments in half. Compl. ¶ 16. Plaintiff alleges that he was told not to make payments until he was offered the trial modification.[1] Id.

Over the course of the following months, Plaintiff alleges that he spent dozens of hours attempting to navigate a dizzying corporate bureaucracy that provided conflicting instructions (including whether to continue to make payments) and gave conflicting accounts of his status in the loan modification process. In May 2010, BAC unexpectedly began foreclosure proceedings. Compl. ¶ 20. Plaintiff was told that if he did not pay his outstanding payment balance plus additional foreclosure fees, he would be foreclosed upon. Id. BAC's runaround continued, and Plaintiff was eventually forced to send $18,926.65 to BAC in order to redeem his property. Compl. ¶ 22.

The day after sending the redemption check, Plaintiff received a letter indicating that he might qualify for a six month forbearance and to request a forbearance in writing. Compl. ¶ 23. Plaintiff immediately called BAC's attorney to stop his check while his forbearance request was being processed, but BAC refused to return the funds. Id.

---

[1] Plaintiff's wording in his Complaint is somewhat confusing. He states: "Defendant BAC also told Plaintiff that he should not make a payment to qualify and until he was offered the trial modification and a modification package would be issued out." Compl. ¶ 16.

In July 2010, Plaintiff was told that he was past the initial review stage of his loan modification application and would be placed in underwriting, which could take up to three months.  Compl. ¶ 25.  One month later, Plaintiff was told he was no longer in underwriting because he and BAC were negotiating a deed in lieu of foreclosure.  Compl. ¶ 26.  After making eight phone calls and speaking to sixteen different people, Plaintiff explained that this deed in lieu of foreclosure had never been negotiated or discussed with him.  Id.  Eventually, he was told that he was still in underwriting.  Id.  In the week following this conversation, Plaintiff received paperwork indicating he had accepted the deed in lieu of foreclosure.  Id.  After once again making several phone calls and speaking with numerous employees at BAC, Plaintiff was able to confirm that he was still in underwriting.  Id.

On October 4, 2010, Plaintiff called BAC for an update on his home loan modification.  Compl. ¶ 27.  BAC told Plaintiff he was still in underwriting and to call back in a couple of weeks.  Id.  On October 12, 2010, Plaintiff called BAC again.  Compl. ¶ 28.  BAC told Plaintiff he had failed to timely send in his 2008 and 2009 tax returns, and, consequently, BAC had denied his loan modification request.  Id.  As of the time of filing this lawsuit, Plaintiff and his wife continue to live in their home, but they receive one to three collection calls from BAC per day.

4

Compl. ¶ 29.

Plaintiff brings seven claims against Defendants.[2]  Count One is a claim that BAC violated RESPA by failing to respond to Plaintiff's written correspondence.  Count Two is a claim that BAC and Bank of America offered Plaintiff a loan modification which he accepted, and that those Defendants breached that agreement.  Count Three does not identify a Defendant, but seeks recovery for breach of a forbearance agreement.  Count Four is a claim against BAC based on BAC's alleged breach of an oral contract regarding loan modification.  That Count also contends, in the alternative, that Plaintiff can recover from BAC on a theory of promissory estoppel.  Count Five claims Defendant BAC's loan collection efforts were unreasonable.  Count Six alleges that BAC made intentional misrepresentations to Plaintiff.  And Count Seven alleges that BAC violated the New Jersey Debt Collection Act.[3]

---

[2] The Complaint is somewhat unclear about which entity is each claim is brought against.

[3] Defendants interpret the Complaint to raise a claim against defendant BAC for violating the Home Affordable Modification Program (HAMP).  To the extent it does, the Court agrees with Defendants that such claims would be barred because HAMP does not include a private right of action. Marks v. Bank of America, N.A., No. 10-8039, 2010 WL 2572988, at *6, *7 (D. Ariz. June 22, 2010) (holding that there is neither an express nor implied private right of action under HAMP); Hart v. Countrywide Home Loans, Inc., 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010); Speleos v. BAC Home Loans Servicing, 755 F. Supp. 2d 304, 311 (D. Mass. 2010).

**III. DISCUSSION**

    **A.    Standard of Review**

In deciding the Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). Thus, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> Therefore, after <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

<u>Fowler</u>, 578 F.3d at 210-11 (citations omitted).

The court will thus look at each count separately, determining what would be required for a plausible case and then decide whether the alleged facts are sufficient to meet this minimum requirement.

Plaintiff has not filed an opposition to this motion. Even where a motion to dismiss is unopposed, the Court must still undertake an analysis of the motion's merits, at least when the nonmovant is not represented by counsel. <u>Chocallo v. IRS Dept. of Treasury</u>, 145 Fed. App'x 746, 747-8 (3d Cir. 2005). <u>See also</u> <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (3d Cir. 1992) ("[I]f a motion to dismiss is granted solely because it has not been opposed, the case is simply not being dismissed because the complaint has failed to state a claim upon which relief may be granted. Rather, it is dismissed as a sanction[.]").

7

**B.   RESPA**

The Cranston-Gonzalez National Affordable Housing Act amended the Real Estate Settlement Procedure Act (RESPA) in an effort to protect mortgagors from abusive loan servicing.  Pub. L. No. 101-625 (1990).  Among other things, the amendment added to RESPA a provision stating that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower . . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken within such period."  12 U.S.C. § 2605(e)(1)(A). The Act defines a "qualified written request" as

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B)(i) & (ii).

The crux of the current dispute regarding Plaintiff's RESPA claim is whether Plaintiff's alleged written requests are qualified written requests under RESPA.  Plaintiff contends in the Complaint that his application for a loan modification,

8

which included a hardship affidavit and "written submissions of financial information" as well as his "[v]erbal and written request for an investigation of misrepresentations made by Defendant BAC with respect to his mortgage account" counted as qualified written requests.  Compl. ¶¶ 33, 34.

The text of § 2605(e)(1)(B) does not precisely define what a "qualified written request" is, there are no regulations interpreting the phrase, and the legislative history offers no guidance.[4]  What is clear from the statutory text is that it is a writing that notifies the servicer of the name and account of the borrower, seeks "information relating to the servicing of such loan," and is not "notice on a payment coupon or other payment medium supplied by the servicer."  § 2605(e)(1)(i).

Loan servicing companies now have duties extending far beyond facilitating payments.  But RESPA somewhat narrowly defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower."  § 2605(i)(3).  Perhaps a congress familiar with the

---

[4] The Secretary of Housing and Urban Development declined to further define "qualified written request" in the initially promulgated regulations, citing the statutory language as being sufficiently clear.  59 Fed. Reg. 65442, 65445 (Dec. 19, 1994). And while a recent congressional act instructs the Secretary to promulgate regulations further defining the term, no such regulation has yet been issued.

modern mortgage industry would have expanded the scope of what constitutes "servicing" so as to require responses to written inquiries about loan modification, but the Court must interpret the Act as written.

Although "servicing" is clearly if narrowly defined, Congress's use of the phrase "relating to" creates considerable ambiguity.  It is widely held that a request for rescission of a loan is not a request for information related to the servicing of a loan, because it relates more directly to the faulty origination of the loan, not its servicing.  Taggart v. Wells Fargo Home Mortg. Inc., No. 10-0843, 2010 WL 3769091, at *6 (E.D. Pa. Sept. 27, 2010); Keen v. American Home Mortg. Servicing, Inc., 664 F. Supp. 2d 1086, 1096-97 (E.D. Cal. 2009); Taylor v. Nelson, No. 02-6558, 2006 WL 266052, at *14 (E.D. Pa. Jan. 31, 2006); DeVary v. Countrywide Home Loans, Inc., 701 F. Supp. 2d 1096, 1109 (D. Minn. 2010).  Some courts have applied the same reasoning to loan modification, the notion being that loan modification is about the loan itself, and not servicing. See Cruz v. Mortgage Lenders Network, USA, No. 09-CV-1679 BEN (AJB), 2010 WL 3745932. At *2 (S.D. Cal. 2010); Shatteen v. JPMorgan Chase Bank, Nat'l Ass'n, Civ. Action No. 4:10-cv-107, 2010 WL 4342071, *8 (E.D. Tex. Sept. 30, 2010); Williams v. Wells Fargo Bank, N.A ., Inc., No. C 10-00399 JF (HRL), 2010 WL 1463521 at *3 (N.D. Cal. April 13, 2010).

The question before the Court is therefore whether "relating to" should be read broadly, to encompass virtually any request for information that might indirectly relate to payments, or more narrowly, to exclude requests for information that only relate to payments because the information is about the loan generally.  The clear weight of precedent lies with Requiring the relationship to be direct, excluding requests that only relate to servicing because they address the validity of the loan or amendment of its terms.  And this approach makes sense in the wider context of § 2605, which is concerned with consumer interactions with loan servicers as distinct from loan originators or loan holders, even if those lines have blurred somewhat in the intervening decade.

Given the weight of precedent, and the fact that Plaintiff has not opposed this motion and therefore the Court is reluctant to buck precedent in the absence of carefully considered adversarial argument, the Court will follow those courts which have found that to relate to servicing, a request must seek information about an account's status, or the recording or making of payments, but that this does not extend to inquiries about modification of the terms of the loan.  Consequently, Plaintiff's written applications for loan modification do not

fall within the protections of RESPA.[5]

The other qualified written request alleged by Plaintiff is too vague to satisfy even the low bar of notice pleading. Rule 8, Fed. R. Civ. P., requires the pleadings to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff alleges that his "verbal and written request for an investigation of misrepresentations made by Defendant BAC with respect to [the] mortgage account" constitutes a qualified written request. Compl. ¶ 34. But Plaintiff does not clarify which part of the request was actually written, does not identify what misrepresentations he's talking about, does not identify to whom he sent this request, and does not state when such a request was sent. If Plaintiff timely wrote to BAC seeking information about the instructions

---

[5] The logic of this approach to defining qualified written requests does dictate, however, that to the extent a written request seeks information about the status of the account as a result of the loan modification application – i.e., whether it is currently in forbearance, or whether payments are currently stayed because of a pending loan modification application – then the request falls squarely into the category of information relating to servicing. Cf. Catalan v. GMAC Mortg. Corp., 629 F.3d 676, 687 (7th Cir. 2011) ("Any reasonably stated written request for account information can be a qualified written request."). Therefore, it is crucial to distinguish between writings that seek loan modification or information about loan modification options, and writing that seek information about the effects of a loan modification application on the servicing of the status quo loan.

12

not to make payment, for example, this might fall within the scope of a qualified written request. Unfortunately, the Complaint is too vague to determine whether the content of the request referred to in ¶ 34 fit within § 2605. This claim will therefore be dismissed without prejudice.[6]

### B.   Breach of Contract Claims

Counts Two, Three, and Four allege that Defendants breached loan modification and forbearance contracts. Under New Jersey law, a contract requires mutual assent and consideration, among other things. See generally Cohn v. Fisher, 287 A.2d 222 (N.J. 1972). As explained below, the Complaint does not clearly allege that either element existed as to a loan modification agreement or a forbearance agreement between Plaintiff and any of the defendant entities, and so these claims will be dismissed without prejudice.

As to loan modification, Plaintiff simultaneously alleges his loan modification was denied because he failed to send in all the proper paperwork, Compl. ¶ 28, and that Defendant Bank of America offered Plaintiff a loan modification that Plaintiff accepted. Compl. ¶¶ 41, 55, 56. It is possible that Plaintiff received an offer, accepted it properly, and Bank of America

---

[6] Because the Court finds that Plaintiff did not send Defendant qualified written requests within the meaning of RESPA, the Court need not reach Defendants other arguments.

simply erroneously thought it could still decline to enter the agreement.  But Plaintiff's conclusory allegations of offer and acceptance, along with the allegations that the application was denied, do not offer enough information about the putative offer and his alleged acceptance to provide a plausible basis for believing a contract was formed.  Similarly, as to forbearance, Plaintiff seems to indicate that he requested such an agreement, but does not allege the basic factual predicate for a contract claim under New Jersey law.  Compl. ¶ 51.[7]

Even assuming for the sake of argument that there were offers and acceptance, they do not constitute contracts as alleged, because it is not clear if any consideration was offered in exchange for any of the promised modifications, such as a waiver of legal claims or back payments.  A promise only becomes an enforceable contract when some consideration is exchanged for it.  Friedman v. Tappan Dev. Corp., 126 A.2d 646, 652 (N.J. Sup. Ct. 1956).  Without consideration, a contract is unenforceable.  Continental Bank of Pennsylvania v. Barclay Riding Academy, Inc., 459 A.2d 1163, 1171 (N.J. Sup. Ct. 1983)

---

[7] The Complaint does refer to some "copies of contracts" purportedly attached as exhibits, but which are not attached in the Court's record on removal.  Since Defendants have certified that they have submitted the complete pleading, the Court can only conclude that these exhibits were never attached.  If Defendants have incorrectly made this certification, they are obligated to inform the Court of their error, and this may serve as a basis for reconsidering the present motion.

("No contract is enforceable, of course, without the flow of consideration — both sides must 'get something' out of the exchange."). Woodtrail Apartments, Ltd. V. HFC Commercial Realty, Inc., No. 89-5588, 1990 U.S. Dist. WL 139245, at *8 (N.D.Ill. Sept. 14, 1990) (holding that consideration was necessary to support a promise to forbear.).

### C. Promissory Estoppel

Plaintiff argues that he is entitled to damages for Count Four under a promissory estoppel theory. Compl. ¶ 61. There are four elements to a prima facie case for promissory estoppel: "(1) a clear and definite promise by the promisor; (2) the promise must be made with the expectation that the promisee will rely thereon; (3) the promisee must in fact reasonably rely on the promise, and (4) detriment of a definite and substantial nature must be incurred in reliance on the promise." Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 395 A.2d 222, 230 (N.J. Super. Ct. App. Div. 1978).

In relevant part, Plaintiff alleges that "Defendant BAC offered Plaintiff a modification," and "Plaintiff accepted this offer by making [an] application," and that "One term of the contract" was that Plaintiff's home would not enter foreclosure. Compl. ¶¶ 55-57. These allegations are not sufficiently clear to distinguish between BAC having made a promise not to

foreclose, and BAC having made an offer that would include a promise not to foreclose if and when BAC approved Plaintiff's application.

Because it is not clear whether Plaintiff alleges that BAC actually made a promise, or whether BAC just informed Plaintiff that such a promise would be made if an application were approved, the Court cannot determine whether Plaintiff's allegations state a claim for promissory estoppel.  Plaintiff will have the opportunity to amend the Complaint to make his pleadings clearer.

### D. Unreasonable Collection Efforts

In Count Five, Plaintiff asserts that BAC engaged in "unreasonable" efforts to collect on Plaintiff's loan.  Compl. ¶ 64.  These allegations are too conclusory to state a claim, because they do not identify the allegedly unreasonable conduct.  See Twombly, 550 U.S. at 555 (2007).  And, in any case, Plaintiff does not identify a legal cause of action.  Among the problems with such conclusory allegations is that the Court cannot determine if Plaintiff is complaining of BAC's conduct before or after default, which is the determinative question for whether BAC could be liable under Plaintiff's most plausible cause of action, the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p.  See Whittingham v. Mortg. Elec.

Registration Services, Inc., No. 06-3016, 2007 WL 1456196, at *7 (D.N.J. May 15, 2007) ("Importantly, the legislative history of the FDCPA demonstrates that the term 'debt collectors' does not encompass a mortgage servicing company."); Conklin v. Purcell, Krug & Haller, No. 05-1726, 2007 U.S. Dist. WL 404047, at *5 (M.D.Pa. Feb. 1, 2007) ("When a company is servicing a current payment plan or forbearance agreement rather than demanding payment on a defaulted loan, that company is not subject to the FDCPA.").

### E.  Misrepresentation

Count Six contends that BAC made intentional, or in the alternative, negligent misrepresentations to Plaintiff, and that he relied on them to his detriment.  But the Complaint pleads all of this in the form of content-free conclusions; it does not indicate what putative misrepresentations Plaintiff is referring to with this claim, and how Plaintiff relied on them to his detriment.

If Plaintiff is referring to the instruction to stop making payments, the Court might infer that when Plaintiff was told not to make payments (if indeed he was, as even this allegation is ambiguously phrased), he must also have been told that this would not result in greater arrears.  But assuming this to be the misrepresentation in question, Plaintiff does not make clear

17

how he relied on it to his detriment (e.g., that he incurred some late fees for not making the timely payments as part of the amount he had to pay to redeem his mortgage).  <u>Gutman v. Howard Sav. Bank</u>, 748 F. Supp. 254, 257 (D.N.J. 1990) (noting that Plaintiff must plead how he detrimentally relied on the misrepresentation to state a claim).

If the putative misrepresentation is that BAC would not initiate foreclosure proceedings, the Complaint does not clearly allege that such a representation was made, as distinct from being offered as part of a contract that was never formed.  And, in any case, Plaintiff does not make clear how he relied on these misrepresentations to his detriment.  Finally, if Plaintiff is referring to some other putative misrepresentations, it is not clear to what he refers, and therefore the claim is not sufficiently pleaded to satisfy Rule 8, Fed. R. Civ. P.[8]

### F. NJ Debt Collection Act

Plaintiff's final claim relies on the New Jersey Debt

---

[8] Additionally, the intentional misrepresentation claim, if not the negligent misrepresentation claim, is subject to the heightened pleading standard of Rule 9(b) which states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  This rule is far from satisfied here.

Collection Act.  This Act was introduced in the New Jersey General Assembly on March 10, 2008 and passed by the General Assembly on June 25, 2008.  A2493 New Jersey Fair Debt Collection Practices Act, New Jersey Legislature, http://www.njleg.state.nj.us/Default.asp (enter "A2493" into the "Bill Number" field, select the 2008-2009 Legislative Session and click "Search"; click the "A2493" hyperlink).  On June 25, 2008, the Act was sent to the New Jersey Senate.  Id.  However, the Senate never passed the bill.  Id.  For proposed legislation to become law in New Jersey, it must first be passed by both the General Assembly and Senate before proceeding to the Governor for approval.  N.J. Const. art. V, § 1 ¶ 14(a).  In this case, because the Senate never passed the legislation, it is not a law.  Therefore, Plaintiff cannot raise a claim under it.

**IV.   CONCLUSION**

If Plaintiff's allegations are true, then he was mistreated by one or more defendants and he may well have some legal cause of action.  But the Complaint does not sufficiently support any of the identified causes of action as currently pleaded because it is too ambiguous in critical sections, or because it fails to align the claim with the concrete factual allegations that support it.  If Plaintiff still intends to pursue this case, it is necessary for Plaintiff to amend the Complaint to clearly

plead these claims so as to put Defendants on notice of the precise conduct underlying each claim as against each defendant. It is not sufficient to incorporate 70 paragraphs of the Complaint into a count and leave Defendants and the Court to guess about what exactly Plaintiff is claiming constitutes misrepresentation, acceptance, reliance, and the other key elements of Plaintiff's claims.

Defendants' motion for dismissal under Rule 12(b)(6) shall be granted without prejudice to Plaintiff moving for leave to amend with respect to all of Plaintiff's claims except Plaintiff's claim under the proposed New Jersey Debt Collection Act. <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410 (3d Cir. 1997). Plaintiff's claim under the New Jersey Debt Collection Act shall be dismissed with prejudice because amendment would be futile. <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 236 (3d Cir. 2008). The accompanying Order is entered.

**August 30, 2011**                                     **s/  Jerome B. Simandle**
Date                                                     JEROME B. SIMANDLE
                                                         United States District Judge